IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DANIELLE LEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-1146-CV-W-ODS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her application for supplemental security income benefits. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born in June 1974 and has a high school education. She initially applied for benefits on May 30, 1997; the application was denied and Plaintiff did not appeal the decision. She filed the instant application on July 22, 1998, and the ALJ found no reason to reopen her initial application. Therefore, while the current application alleges an onset date of May 1996, the initial application is *res judicata* as to her condition prior to its filing and to be entitled to benefits Plaintiff must have been disabled on or after May 31, 1997.

Plaintiff's alleged disability is related to her spastic diplegia, which is a mild form of cerebral palsy. She alleges she has swelling in both ankles, chronic back pain, migraines, and depression. Unfortunately, Plaintiff has not provided much in the way of medical evidence. In July 1998, Plaintiff saw Dr. Brad Carper with complaints of pain. Tests were performed that were not illuminating. Dr. Carper prescribed Flexeril, and Plaintiff never returned. R. at 329-30. She was seen by a consulting physician (Dr. Ian Belson) in August

1998, to whom she indicated her primary complaints were headaches and leg and back pain. She was being treated with Vicodin, Flexeril and Relafen. R. at 331. Testing confirmed a decreased range of motion in her back and hips and a mild gait impairment. R. at 332-33. However, Dr. Belson opined Plaintiff "would have no problem sitting or manipulating objects with her hands. There are no cognitive problems. She has no difficulty with vision or hearing. There may be some problems carrying, lifting, [and] balancing because of her mild gait impairment. . . . There was no significant psychiatric impairment." R. at 333-34.

Dr. Gene McFadden first treated Plaintiff on August 5, 1999. Plaintiff complained of pain and swelling in her lower legs. She also reported "a lot of general complaints all over her body and lower back. Doesn't feel good all over. States she is unable to work because of this problem." Plaintiff also advised Dr. McFadden that she was trying to obtain disability benefits. He recommended Plaintiff see a rheumatologist and made the appointment for her. R. at 343. However, Plaintiff did not keep the appointment which was at the University of Missouri in Columbia) because she did not have a car and Medicaid would not pay for transportation. R. at 343-44. An appointment was made with a rheumatologist at Truman Medical Center in Kansas City; Plaintiff reported the rheumatologist told her "it was all in her head." Dr. McFadden indicated he would order the records from the visit, and those records appear at pages 346-54 of the Record. The testing performed failed to demonstrate a connection between Plaintiff's spastic diplegia and her reports of pain, and also failed to identify any other causes for her pain. R. at 347, 349; see also R. at 79. Plaintiff's next appointment with Dr. McFadden was scheduled for December 1, 1999; Plaintiff did not appear and she never saw Dr. McFadden again. R. at 342.

In early November 2000, a counselor (John Keough) performed a consultative psychological exam. Plaintiff reported experiencing depression due to her physical condition, including lack of motivation, feelings of hopelessness, crying spells, sleeplessness, and suicidal thoughts. R. at 365. Testing was unremarkable, and Plaintiff indicated she was to work "mentally, but not physically." R. at 366-67.

2

A rheumatologist (Dr. Paul Katzenstein) performed a consultative exam on November 13, 2000. He found Plaintiff had an unbalanced gait and some swelling and tenderness in her legs, but observed Plaintiff was able to walk, climb on and off the examination table, and stand without assistance. Dr. Katzenstein concluded Plaintiff "should be able to sit most of a workday without difficulty. . . . She should be able to stand for up to one hour per eight hour shift and she should be able to walk short distances throughout the day." R. at 368-69.

During the hearing, Plaintiff testified she experiences pain in her legs, feet and lower back "all the time" that rated a seven on a scale of one to ten. R. at 58. She estimated that she could walk no more than a block and a half and could stand for about an hour. R. at 59-60. If she was able to alternate sitting and standing at will, she could do so without limitation. R. at 60-61. Plaintiff did not indicate there were any limitations on her ability to sit.

At the time of the hearing Plaintiff had a full-time job. She had missed five days of work in the preceding four months due to pain. R. at 61-63. The job required her to spend some days entirely on her feet, and at the end of those days she was in significant pain. R. at 63. She estimated that she was able to lift no more than ten pounds. R. at 66.

Plaintiff has prior work experience as a fast food worker, fast food supervisor, cashier and clerk. While she has worked sporadically, and the Record is not clear as to when she held particular jobs, it seems clear Plaintiff has been employed at least since 2000. R. at 95. One of the jobs she held was a desk job for the USDA. R. at 68-69. Plaintiff explained that she was able to do that job but she "had another job along with that so it made for a long day." R. at 69. She eventually left the job with the USDA because it was a temporary position and the term ended. R. at 244. However, when asked whether she could perform a job like that full time, Plaintiff testified (for the first time) "it hurts to sit for periods of time too." R. at 73-74. Upon further questioning, she testified she could sit for twenty minutes at a time. R. at 74. Plaintiff reported she was noncompliant with medication because the side effects (nausea and drowsiness) were too severe to tolerate, even though the medicine alleviated her pain. R. at 79-80.

Plaintiff lived alone for the two years preceding the hearing; prior to that time she lived with her mother. R. at 82-83. While on her own, Plaintiff does all of the housework. R. at 83-84. She reports increased depression as her pain increases, and crying spells approximately twice a week. R. at 92-93.

The ALJ elicited testimony from a vocational expert ("VE"). In his first hypothetical question, the ALJ asked the VE to consider a person who could lift and carry ten pounds maximum and two pounds regularly, required an option to sit or stand at her discretion, needed to avoid prolonged walking, and needed a job that did not involve complex instructions. The VE testified that such a person could perform the jobs of cashier, surveillance systems monitor, and telephone solicitor. R. at 98. The VE also testified that a person who missed "two or three or more days work per month" could not maintain employment. R. at 99. Finally, the VE testified that a person who could not remember and follow instructions or maintain adequate concentration and pace due to depression or pain could not maintain employment. R. at 99-100.

The ALJ concluded Plaintiff's testimony about the severity of her subjective complaints was inconsistent with the evidence in the record as a whole. Multiple examinations revealed no infirmities that would cause the severity of pain Plaintiff described. Plaintiff's statements to the doctors did not reflect she was experiencing the severity of pain she described at the hearing. In fact, Plaintiff reported she was able to sit without difficulty. While the ALJ determined the amount of work Plaintiff performed did not rise to the level of substantial gainful activity, he nonetheless considered it in determining her residual functional capacity. In this regard, Plaintiff performed a desk job without difficulty other than the fact that she had a second job at the same time, and she left the desk job because it ended and not because she was unable to perform the tasks. When asked why she could not perform another clerical job, Plaintiff – for the first time in the Record – reported that she was able to sit for only twenty minutes at a time. Based on the VE's testimony, the ALJ concluded that Plaintiff could perform work that exists in the national economy.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Plaintiff's primary arguments involve the ALJ's assessment of Plaintiff's complaints of pain. The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that she experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work

5

> record, and observations by third parties and treating and
> examining physicians relating to such matters as:
>
> > 1. The claimant's daily activities;
> > 2. the duration, frequency and intensity of the pain
> > 3. precipitating and aggravating factors;
> > 4. dosage, effectiveness and side effects of medication;
> > 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322.

In contending the Commissioner's final decision is not supported by substantial evidence, Plaintiff refers to a June 4, 1998, evaluation from the Missouri Division of Family Services. The Court cannot locate an evaluation from this source on that date; the closest such report appears at pages 310-14 of the Record, and does not suggest Plaintiff is limited in any manner. Plaintiff also points to a note written by Dr. McFadden wherein he asked Medicaid to provide her with transportation to the University of Missouri because of Plaintiff's "debilitating condition." R. at 344. The ALJ was justified in not according substantial weight to this one-sentence assessment because it was not supported by the rest of Dr. McFadden's notes. More importantly, Dr. McFadden clearly had not arrived at a final diagnosis or opinion – this was the reason he was sending Plaintiff to a rheumatologist in the first place. Finally, Plaintiff stresses her own testimony. However, the ALJ properly considered the factors that are to be considered and was entitled to conclude that Plaintiff's testimony was outweighed by (1) her activities, including her employment, (2) her statements to doctors, (3) the results of medical examinations, and (4) the fact that medication was effective in alleviating her pain.

6

## III. CONCLUSION

Substantial evidence in the record as a whole supports the ALJ's findings regarding Plaintiff's residual functional capacity, and the VE's testimony provided a substantial basis for concluding Plaintiff can perform work in the national economy. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

                                                           /s/ Ortrie D. Smith
                                                           ORTRIE D. SMITH, JUDGE
DATE: April 25, 2006                                     UNITED STATES DISTRICT COURT